IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WILLIAM ALEXANDER PALACIOS
CONTRERAS,
                *Petitioner,*

    v.

TODD LYONS, *et al.*,
                *Respondents.*

1:26-cv-1210-MSN-IDD

## ORDER

William Alexander Palacios Contreras ("Petitioner") filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, Petitioner alleges that his continued immigration detention violates the Immigration and Nationality Act ("INA") (Count I), its regulations (Count II), and his due process rights (Count III).

Petitioner is currently detained at the Farmville Detention Center in Farmville, Virginia. ECF 1 ¶ 25. He has sued Todd M. Lyons, ICE's Acting Director; Joseph Simon, the Field Office Director of ICE's Washington Field Office; Markwayne Mullin, the DHS Secretary; and Todd Blanche, the acting Attorney General (collectively "Federal Respondents"). *Id.* at 1. He has also sued Jeffrey Crawford, the warden of the Farmville Detention Center. *Id.*

Petitioner was granted humanitarian parole in 2023 and has lived in the United States since that time. ECF 1 at 6. Petitioner argues that he is subject to discretionary detention under 8 U.S.C. § 1226(a) and thus entitled to a bond hearing that Federal Respondents are allegedly withholding by designating Petitioner as an "applicant[] for admission" subject to mandatory detention under

8 U.S.C. § 1225(b). ECF 1 at 4-5. Petitioner also argues his parole was unlawfully revoked. *Id.* at 5-6.

In response to the Court's Order of May 7, 2026 (ECF 2), Federal Respondents have confirmed that the factual and legal issues presented in the Petition do not differ in any material fashion from those presented in *Pineda-Berrios v. Lyons et al.*, 1:25-cv-2332 (E.D. Va. Feb. 11, 2026). ECF 6. Accordingly, the Court incorporates the filings from *Pineda-Berrios* into this case and for the reasons that follow, the Court finds that Petitioner's due process rights were violated when decisions about his re-detention were made without a meaningful opportunity to be heard.

## I.    BACKGROUND

### A.    Factual Background

Petitioner is a citizen of El Salvador. ECF 1 ¶ 12. Petitioner entered the United States without inspection in or around 2023. *Id.* ¶ 24. At that time, Petitioner was granted humanitarian parole. *Id.* ¶¶ 2, 24. Petitioner applied for asylum and withholding of removal, but that application was denied on November 24, 2025, and Petitioner was ordered to be removed. *Id.* ¶ 24. On December 3, 2025, Petitioner filed a notice of appeal to the Board of Immigration Officials. *Id.* ¶ 25. That application remains pending. *Id.* Petitioner was later detained at a routine check-in with ICE and has been detained in the Farmville Detention Center since April 30, 2026. *Id.* ¶¶ 3, 12.[1] Petitioner was not provided any written explanation for his detention, and no notice that his parole had been terminated or that he had violated the conditions of his parole. *Id.* ¶ 3. Petitioner has not received a bond hearing. *Id.* ¶ 23.

---

[1]    Federal Respondents have waived any argument that Petitioner did not exhaust his administrative remedies with respect to his habeas claim.

## B.    Legal Background

Persons detained upon arrival into the United States fall into two categories: noncitizens including those who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" or specially designated by the Attorney General covered under 8 U.S.C. § 1225(b)(1), and "most other applicants for admission" covered under the "catchall" provisions of 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Persons subject to Section 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id*. But, if a noncitizen subject to Section 1225(b)(1) indicates either an "intention to apply for asylum' or a "fear of persecution," then they will be referred for an asylum interview by an immigration officer. *Id*. If the officer determines that the noncitizen has a "credible fear" of persecution, then the claim will receive "full consideration" in standard removal proceedings pursuant to 8 U.S.C. § 1229a. *Dep't of Homeland Sec, v. Thuraissigiam*, 591 U.S. 103, 110 (2020).

In such a scenario, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). But even so, the government may still release the noncitizen on parole "on a case by case basis for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)). Regulations require that, in determining whether parole is appropriate, DHS officials "should apply reasonable discretion" and may consider "all relevant factors" including: the giving of an undertaking by the applicant, counsel, or sponsor to ensure appearances or departure; community ties such as close relatives with known addresses; and agreement to reasonable conditions (such as periodic reporting of whereabouts." 8 C.F.R. § 212.5(d) (noting that appropriate bond or

3

"reasonable assurances that the alien will appear at all hearings, and/or depart the United States when required to do so" may be required).

Humanitarian parole "shall not be regarded as an admission of the alien" and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). But in revoking parole, Section 1182(d)(5)(A) requires that the DHS determine that "the purposes of such parole . . . have been served." Moreover, the regulations specify that:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(e) (emphasis added).

8 U.S.C. § 1226, in contrast, establishes "the default rule" for detaining and removing aliens "'already present in the United States.'" *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 578 (E.D. Va. 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and

4

detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," "release the alien on ... bond of at least $1,500," or "release the alien on... conditional parole." *Id.* § 1226(a)(1)–(2) (emphasis added). Thus, individuals subject to detention under § 1226(a) are entitled to a bond hearing.

§§ 1225 and 1226 create a dichotomy: § 1225(b)(2)(A) "covers aliens seeking admission to the United States" and § 1226(a) "covers aliens already present in the United States." *Duarte Escoboar*, 807 F. Supp. 3d at 578. A detainee seeking bond must therefore demonstrate that they are detained subject to § 1226, which permits bond determinations, rather than § 1225, which does not.

## II.    ANALYSIS

The central question presented in this Petition is whether Petitioner's detention violates due process. Regardless of the statutory petition under which Petitioner is detained, Federal Respondents failed to provide him with due process.

Neither party provided the Court with Petitioner's parole paperwork, however, Federal Respondents do not contest the fact that Petitioner was on parole. Federal Respondents failed to offer any argument as to whether the purposes of his parole had been served. Similarly, the record provides no indication whether the purposes of Petitioner's parole had been served prior to his detention. The Court observes that Judge Brinkema's opinion in *Pineda-Berrios v. Lyons et al*, ECF 13, No. 1:25-cv-2332-LMB-LRV (E.D. Va. Feb. 11, 2026), concerns facts and law that are materially indistinguishable from the case at hand, and the Court adopts and incorporates the reasoning in *Pineda-Berrios* in whole. DHS does not have pure discretion to revoke parole. *Id.* at *7. Fundamentally, Federal Respondents have effectively revoked Petitioner's parole and detained

him but without any notice, hearing or individualized consideration of Petitioner's circumstances or whether the purposes of parole had been accomplished that the regulations and due process require. *Id.* at 9-14 & n.3 (collecting cases); *see, e.g., Edrees Omari v. Todd Lyons, et al.*, 1:25-cv-2483, ECF 9 (E.D. Va. Feb. 17, 2026); *Seleznev v. Mullin*, 2026 WL 907692, at *6 (E.D. Va. Mar. 31, 2026) ("As Mr. Seleznev correctly observes, courts around the country have determined that, when, as here, a petitioner is paroled into the United States for purposes of applying for asylum, and that asylum application remains pending, revoking parole without a determination as to whether its purposes have been served is inappropriate.") (citation omitted); *Perez v. LaRose*, 2025 WL 3171742, at *4-5 (S.D. Cal. Nov. 13, 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 416-20 (S.D.N.Y. Sept. 12, 2025). Thus, Petitioner's current detention is unlawful, and Federal Respondents must release him.

## III.   CONCLUSION

For all the reasons stated above, the Petition (ECF 1) is GRANTED, and it is hereby

ORDERED that Petitioner be immediately released from custody, with all his personal property, subject to the conditions of his existing parole, except for any one-year limitations; it is further

ORDERED that Federal Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Petitioner unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of parole, except for the one-year limitation; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R.§ 212.5(e).

The Clerk of Court is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, to forward a copy of this Order to counsel of record, and to close this civil action.

**IT IS SO ORDERED.**

_____/s/_____

Michael S. Nachmanoff
United States District Judge

May 21, 2026
Alexandria, Virginia